**CLAROSTAT MFG., INC., Appellant,**

v.

**ALCOR AVIATION, INC., Appellee.**

No. 15558.

Court of Civil Appeals of Texas,
San Antonio.

Dec. 8, 1976.

Rehearing Denied Jan. 5, 1977.

Davis & O'Connor, Robert B. O'Connor, Charles M. Jefferson, San Antonio, for appellant.

Robert L. Strickland, John T. Dailey, San Antonio, for appellee.

CADENA, Justice.

This is a suit for breach of express and implied warranty. Defendant, Clarostat Manufacturing Company, Inc., appeals from a judgment, following a jury trial, awarding plaintiff, Alcor Aviation, Inc., $85,861.00 in damages. Plaintiff complains of the action of the trial court in disregarding that portion of the jury's findings awarding plaintiff an additional $55,666.00 for lost profits and damage to plaintiff's good will and reputation.

Plaintiff, a manufacturer of aviation instruments, is engaged in the manufacture and sale to owners of aircraft of a device, known as an Exhaust Gas Temperature Gauge. It is not necessary for us to attempt to explain the function of this device. A component part of this metering instrument is a device known as a potentiometer, which is manufactured by defendant.

Prior to 1967, defendant manufactured and sold to plaintiff for use in the metering instrument a potentiometer known as an "MH" potentiometer, which performed efficiently. Defendant developed a new model, identified as a "Series 39" potentiometer. A representative of defendant represented directly to plaintiff that this new model would function properly if used in the instruments manufactured by plaintiff. It is undisputed that the Series 39 potentiometer did not function effectively and that it was necessary for plaintiff to replace the defective potentiometers in more than 500 of the Exhaust Gas Temperature Gauges.

The case was submitted to the jury on 18 special issues. The first 10 of these issues, all of which were answered favorably to plaintiff, relate to breach of warranty by defendant. Issues 11–17, which present affirmative defenses urged by defendant, were also answered favorably to plaintiff. Issue 18 related to damages.

We consider first defendant's complaint that the trial court erred in denying Part III of its motion to produce documents.

The relevant part of the motion to produce sought to compel plaintiff to make available to defendant documents and other information relating to plaintiff's overhead expenses. This information was clearly relevant, since plaintiff's claim for damages was based on a formula which can be expressed as "damages = x + xy," where "x" represents plaintiff's direct labor costs and "y" represents the ratio of overhead expenses to direct labor costs.

Plaintiff's suit was filed August 26, 1970. The motion in question was filed on May 13, 1975, six days before the trial began, and

was denied May 16, 1975. The motion sought the production of (1) the raw material, records, and data which plaintiff's accountants used in computing the overhead figures "furnished to the Defendant"; and (2) all interoffice correspondence, memos, evaluations, and any other documents written in 1976 and subsequent years concerning overhead.

It appears that the overhead figures "furnished to the Defendant" by plaintiff were made available to defendant some five months prior to the filing of the motion for production of documents and other items. These figures covered the years 1968–73, inclusive.

The argument in defendant's brief relating to this asserted error consists of recitals to the effect that the motion was filed, resisted by plaintiff, and denied by the trial court, followed by the statement that the only evidence produced by plaintiff relating to overhead consisted of a one-page summary giving the total amount of overhead expense for the six years in question.

In determining whether to grant or refuse a motion for production of documents, the trial court is vested with "a wide discretion and his action will not be reversed unless an abuse of such discretion is shown." *Cutler v. Gulf States Utilities Co.*, 361 S.W.2d 221, 224 (Tex.Civ.App.—Beaumont 1962, writ ref'd n. r. e.). The order denying defendant's motion recites that the motion was denied after the trial court heard evidence relating to the motion. Defendant calls our attention to no evidence which would indicate that the trial court acted arbitrarily or otherwise abused its discretion in denying the motion. Under the circumstances, particularly the unexplained delay in seeking production of the documents, we cannot say that the trial court abused its discretion in denying the motion.

Defendant contends that the trial court erred in submitting the damage issue because such issue, in the form submitted, permitted the jury, in determining the amount of damages, to include damages allegedly suffered by plaintiff as the result of defects in potentiometers purchased from a party, Simpson Electric Company, other than defendant. The argument is that as to the potentiometers purchased by plaintiff from Simpson, the requisite privity of contract between plaintiff and defendant is lacking and that, therefore, as to those potentiometers, plaintiff cannot claim a breach of warranty by defendant.

All of the defective potentiometers, whether purchased by plaintiff from Simpson or directly from defendant, were manufactured by defendant. Simpson manufactured, as plaintiff's subcontractor, at least part of the exhaust gas temperature measuring devices, using potentiometers which Simpson purchased directly from defendant. The evidence shows that defendant was aware of the arrangement between plaintiff and Simpson. The evidence also shows that representations concerning the quality of the potentiometers were made directly to plaintiff by defendant. Under these circumstances, the existence of a contractual relationship between plaintiff and defendant with reference to the devices purchased by plaintiff from Simpson is not essential to recovery by plaintiff for breach of express warranties made directly to plaintiff by defendant. *United States Pipe & Foundry Co. v. City of Waco*, 130 Tex. 126, 108 S.W.2d 432, cert. den., 302 U.S. 749, 58 S.Ct. 266, 82 L.Ed. 579 (1937).

In any event, this defect in the manner of submitting the damage issue was not called to the attention of the court by defendant by objection to the charge, and the error, if any, was waived.

[5] The contention that the court erred in submitting the damage issue to the jury "because there was insufficient evidence for the jury to decide that the Plaintiff was entitled to any amount for its overhead expenses" is without merit. The factual insufficiency of the evidence to support an affirmative answer to an opponent's issue furnishes no basis for refusal to submit the issue. *Strauss v. LaMark*, 366 S.W.2d 555 (Tex.1963); *Imperial Insurance Co. v. Ellington*, 498 S.W.2d 368 (Tex.Civ.App.—San

Antonio 1973, no writ). it should be noted that defendant's sole complaint here and in its motion for new trial relates to the submission of the issue.

Defendant asserts that the trial court erred in submitting Part I of issue 18, the damage issue, because "there was no evidence of probative force to sustain a monetary judgment in the Plaintiff's favor."

Part I of issue 18 is as follows:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate [plaintiff] for its damages, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

You may consider the following elements of damage, if any, and none other:

I.

(a) Potentiometers replaced in meters returned by customers for warranty repair.

(b) Potentiometers removed from meters returned from dealers and OEM.

(c) Potentiometers removed from new meters in various stages of construction and replaced with CTS potentiometers.

(d) CTS potentiometers purchased to replace faulty Clarostat potentiometers.

Answer in dollars and cents, if any.

We, the Jury, answer: $85,861.00.

Part II of issue 18 inquired concerning damages due to lost profits and loss of good will. The jury's answer to Part II ($55,666.00) was disregarded by the trial court.

As already pointed out, of the 18 issues submitted, 7 can be classified as "defendant's issues" in the sense that they related to affirmative defenses on which defendant relied. Defendant did not object to the submission of any of these 7 issues. To the remaining 11 issues, which can be categorized as "Plaintiff's issues," defendant directed 38 objections. Three identical, general stock objections were directed to the submission of each of these 11 issues. These stock objections can be summarized as follows: (1) There is no evidence to support submission of the issue. (2) There is

insufficient evidence to support an answer favorable to plaintiff. (3) An answer favorable to plaintiff would, as to each of these 11 issues, be contrary to the overwhelming weight and preponderance of the evidence.

■ Each of the three stock objections is obviously without merit insofar as each of the 10 liability fixing issues is concerned. In this Court defendant has not even made a token effort to insist that, in the face of the three stock objections, it was error to submit any one of these 10 issues. Of the 33 stock objections directed at the charge, 30 are obviously frivolous. Of the remaining three stock objections, two are without merit on the face of each objection, since the factual insufficiency of the evidence to support an affirmative answer to an opponent's issue, or that an affirmative answer to such issue would be contrary to the overwhelming weight and preponderance of the evidence, is not a valid objection.

■ It must be concluded that under these circumstances the "no evidence" objection to issue 18 was effectively obscured by being included within a bundle of 32 frivolous objections. *Monsanto Co. v. Milam,* 494 S.W.2d 534, 536 (Tex.1973); *McDonald v. New York Central Mutual Fire Ins. Co.,* 380 S.W.2d 545, 549–50 (Tex.1964). "If counsel really means to dissuade the trial court from submitting an issue, he may object to it on the ground that there is 'no evidence' to support an adverse finding, but such an objection has little persuasive effect if the same objection is made to all adverse issues." 1 Tex. Pattern Jury Charges 26 (1969).

Defendant contends that the trial court erred in submitting issues 1–10 because all of those issues relate to a warranty theory of recovery, and since the charge did not contain, and plaintiff did not request the submission of, an issue inquiring whether plaintiff timely notified defendant of the alleged breach of warranty, plaintiff "waived a special issue concerning notice."

■ Plaintiff's petition alleged causes of action based on breach of warranty and

strict liability theories. Since no issues were submitted relating to the right to recover on the theory of strict liability, this "independent ground of recovery" was clearly waived by plaintiff. Rule 279, Tex. R.Civ.P. But, as defendant points out, the issues submitted related to plaintiff's cause of action based on breach of warranty. All the issues submitted were clearly referable to the warranty claim. The giving of notice is merely an essential element of the submitted ground of recovery. It is not an independent ground of recovery. Unless the failure of the charge to embody an issue inquiring as to the existence of an essential element of a submitted ground of recovery was properly called to the attention of the trial court, we must presume that the question of notice was resolved by the judge in a manner which will support the judgment. Rule 279; *Strauss v. LaMark, supra.*

Defendant complains of the refusal of the trial court to submit defendant's requested special issue "W"—which consisted of an inquiry as to the date when plaintiff learned, or, by the exercise of reasonable diligence, should have learned of the defects in the potentiometers. The portion of the motion for new trial to which this point is said to be germane (Part IX) assigns as error the action of the trial court in overruling defendant's "objections" 2–11 to the court's charge. An examination of defendant's objections to the charge reveals that no objection was made concerning the trial court's failure to submit an issue or issues relating to notice.

However, paragraph IX(12)(b) of the motion for new trial points out that the evidence concerning the date on which plaintiff discovered the defect in the potentiometers is conflicting and states that this conflict would have been resolved if the court had submitted defendant's requested issue "W," and that by "erroneously failing to" submit such issue the trial court "made it impossible for an appellate court to determine whether in fact notice" of the breach of warranty was given to defendant within a reasonable time.

The burden of alleging and proving proper notice was on plaintiff. Tex.Bus. & Comm.Code Ann. § 2.607(c)(1) (1968). As far as defendant is concerned, issues relating to notice must be classified as issues "relied upon by the opposing party." Rule 279. Rule 279 provides that a failure to submit an issue shall not constitute reversible error unless its submission was requested in substantially correct form by the complaining party, except that where the omitted issue is one "relied upon by the opposing party" an objection to the omission of such issue shall be sufficient.

The question is whether defendant, who failed to "object" to the charge because of the omission of issues relating to timely notice of the alleged breach of warranty, is in a position to complain of the omission of such issue and thus preclude application of the rule that we must presume that the omitted issue was found by the judge in a manner which supports the judgment in favor of plaintiff.

It is generally said that "objections" and "requests for submission" are not alternative methods of complaining of the court's charge. *Stuckey v. Union Mortgage & Investment Co.*, 383 S.W.2d 429, 437 (Tex.Civ. App.—Tyler 1964, writ ref'd. n. r. e.). It is also generally stated that failure of the charge to include an issue presents no ground for reversal unless the complaining party objected to the charge because of its failure to include the issue relied on by the opponent. *Texas Employers' Insurance Ass'n v. Neuman*, 379 S.W.2d 295 (Tex. 1964).

In *Stuckey* it was said that the failure of the charge to include issues relied on by the opposing party can be ground for reversal only if complainant objected to the charge on the ground of omission of such issue. It was explained that the omission of issues relied on by the opposing party "can hardly be prejudicial to Appellants," since they "would be better off if the Issues were never decided." 383 S.W.2d at 438, *supra.*

A recognized authority on procedure has said, "An objection is necessary (and sufficient) to preserve complaint of the

error in omitting one or more controlling issues which are necessary to submit completely the component elements of a theory of recovery or of defense relied upon by the *opponent* of the objecting party." 3 McDonald, Texas Civil Practice § 12.27.1 (1970 rev.). There can be no doubt that the failure of the trial court to submit issues which are necessary to accomplish a complete submission of an opponent's theory can be called to the court's attention properly by mere objection pointing out such omission. This necessarily follows from the express provisions of Rule 279. But there is nothing in the Rule to support the conclusion that an objection is the only way of calling such omission to the attention of the trial court. Rule 279 requires tender of an issue in substantially correct form, but then goes on to provide that where the omitted issue is one relied on by the opposing party, an objection shall be sufficient. A statement to the effect that an objection is "sufficient" cannot be construed reasonably as a statement to the effect that an objection is "the sole method by which the error can be preserved." All that the Rule says is that when the omitted issue is an issue relied on by the opponent, it shall not be necessary to tender an issue in substantially correct form. It does not say that in case of such an omission the tender of an issue in substantially correct form is insufficient. The purpose of the Rule is to place a more onerous burden on the party relying on the omitted issue than on the opponent. There is nothing in the language to indicate that a party who notes the omission of an issue relied on by his opponent cannot call the omission to the court's attention by tendering the omitted issue for submission.

██ All of the cases which draw a sharp distinction between an objection and a request for submission of a tendered issue seem to involve situation where an issue or definition actually submitted is claimed to be defective. Thus, a mere request to submit a definition different than that proposed by the trial court cannot be considered as an objection specifically pointing out the defect in the definition submitted. *Texas Employers' Ass'n v. Jones*, 393 S.W.2d 305 (Tex.1965). So, also, where a defectively framed special issue is contained in the court's proposed charge, the tender of a correct issue is insufficient, since the tendered issue does not specifically and distinctly call the court's attention to the vice in the proposed issue. *Bell v. Missouri-Kansas-Texas Railroad Co. of Texas*, 334 S.W.2d 513 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n. r. e.).

In such cases, the complaint concerns the submission of a defective issue, not the failure to give an additional issue where there has been no withdrawal of the defective issue. Where the complaint does not relate to the form of an issue or issues actually submitted, but concerns the absolute failure to submit an issue relating to an essential element of the opponent's case, the situation is obviously different.

Where a requested issue is merely different in form from an issue actually submitted, it can be argued persuasively that the tender of the differently worded issue does not, standing alone, call the trial court's attention to the claimed defect in the proposed issue. But where the tendered issue is not a substitute for a proposed issue, but is a request to submit an issue not included in the proposed charge in any form, the mere tender of the omitted issue effectively calls the trial court's attention to the omission. All that is required by Rule 279 is that the omission of an opponent's issue be called to the attention of the trial court. An objection calling the court's attention to such omission is sufficient. There is no basis for the conclusion that a request to submit the omitted issue is insufficient. If the omitted issue is one relied on by the party tendering the substantially correct issue, Rule 279 specifically provides that such tender is sufficient to call the omission to the court's attention. Why should not a similar tender by the opponent be equally effective?

The statement in *Neuman* to the effect that failure to register an "objection" to the court's failure to submit an issue relied on by the opposing party precludes reversal

because of such omission (379 S.W.2d at 296) has no application to the facts before us. In *Neuman*, plaintiff was seeking reversal because of the failure of the trial court to submit, at the request of defendant, an issue relied on by defendant. Plaintiff neither objected to the omission nor requested the submission of the omitted issue. In effect, plaintiff, who had remained mute during the trial, sought to reverse the trial court's judgment because the trial court had refused to submit an issue requested by the opponent. The holding to the effect that the denial of defendant's request could not be relied on by plaintiff as a ground for reversal is obviously correct. An appellant must rely on rulings adverse to him, not on rulings adverse to appellee.

The issue requested by defendant sufficiently called the trial court's attention to the fact that the charge contained no issues relating to notice. It cannot be interpreted as merely an expression of dissatisfaction with the wording or form on a submitted issue or definition.

We conclude that the tender of an omitted issue is sufficient to call the trial court's attention to the omission, even when the omitted issue is one relied on by the opponent of the party making the request for submission. We are, therefore, precluded from presuming that the omitted issue was found by the trial court in favor of plaintiff.

By way of cross-point, plaintiff complains of the action of the trial court in disregarding that portion of the damage issue awarding plaintiff $55,666.00 as compensation for damage to good will and lost profits.

■ There is no evidence in the record before us supporting the conclusion that the profits allegedly lost by plaintiff were due to defendant's breach of warranty. The evidence establishes that at the time the problem with the potentiometers occurred, there was a marked decrease in sales in all facets of the aviation industry. Plaintiff's president testified that he "felt" that the potentiometer problem caused a loss in sales. No effort was made to allocate any portion of the decrease in sales to defendant's breach, as distinguished from the generally depressed state of the aviation industry at the time. Plaintiff's president testified that part of the drop in sales was due to loss of certain government contracts, and part to the potentiometer problem. This is insufficient to support any finding, stated in dollars and cents, of loss due to defendant's breach.

■ With reference to loss of good will, there is no evidence indicating that plaintiff lost any customers because of the potentiometer problem. There is no evidence suggesting that the decline in plaintiff's sales was reflected in increased sales by any competitor. There were, of course, many complaints concerning the functioning of the metering devices, but the evidence reflects that such complaints were honored. Plaintiff's president admitted that no customer had ever indicated that, because of the potentiometer problem, he would refuse to do business with plaintiff in the future. On the basis of the record before us, plaintiff's cross-point is without merit.

The judgment of the trial court is reversed and the cause is remanded for a new trial on all the issues.

KLINGEMAN, Justice (concurring).

I concur in the result.